**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| Lauren Hoyos, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CAUSE NO. 1:24-cv-657** |
| | § | |
| CDW Direct, LLC | § | |
| | § | |
| **Defendant.** | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**I.**

**INTRODUCTION**

Plaintiff Lauren Hoyos files this Original Complaint against Defendant CDW asserting causes of action for discrimination based on sex and for retaliation in violation of 42 U.S.C. §2000e, et. seq. and the Texas Labor Code. In support of this Complaint, Plaintiff states as follows:

**II.**

**PARTIES**

1.     Plaintiff is an individual and a citizen of Hays County, Texas.

2.     Defendant is a corporation with its principal place of business located in Austin, Texas.  Defendant may be served with process, including citation and a copy of this petition, by serving its registered agent for service of process, Corporation Service Company d/b/a CSC-Lawyers Incorporation Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

---

**Plaintiff's Original Complaint**                                                                              **Page 1**

### III.

### JURISDICTION

3.      The Court has jurisdiction over this action because the amount in controversy, exclusive of interest and costs, is within the jurisdictional limits of the Court.

4.      Defendant employs employ the requisite number of employees for coverage under the relevant state laws and statutes upon which Plaintiff's claims are based.

5.      Plaintiff seeks monetary relief over $250,000 but less than $1,000,000.00.

### IV.

### VENUE

6.      Venue is proper in in this District because all or a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in Hays County.

### V.

### BACKGROUND FACTS

7.      Plaintiff started her employment with CDW on or about February 26, 2014. Plaintiff worked as an Inside Account Manager in Illinois and moved in-market (Austin, TX) in June 2021, at the behest of her leadership.

8.      Plaintiff was the only female seller on her team.

9.      In all, there are seven (7) other sellers in the South Central Texas Majors team.

10.     In September 2021, since Plaintiff was in need of inside support,  Plaintiff signed a teaming agreement with another Executive Account Manager, David James, who needed field support and could assist with the inside support Plaintiff needed.

11.     When Plaintiff reviewed the revenue/profit numbers with Defendant prior to entering into her teaming agreement with Mr. James, Plaintiff's revenue/profit split of her team's combined book was 35%/38% respectively.

12.     Plaintiff accepted the offer to join Mr. James' team at a 29% revenue/profit split based on the commitment that as Plaintiff and Mr. James grew the team's business, Plaintiff and Mr. James, would move to an equitable split.

13.     As a team, Plaintiff's book was realizing a total revenue amount of about $55M.

14.     After signing the teaming agreement, however, Mr. James refused to work the accounts Plaintiff brought to the team causing Plaintiff to assume a double role in those accounts as both primary inside account manager and field manager.

15.     The teaming agreement provided for a quarterly review that would include a review of the team's growth and for an adjustment of the split percentages. Defendant assured Plaintiff that the split percentage would be adjusted closer to 50/50 as the team's business grew.

16.     Before signing the teaming agreement Plaintiff's manager, Jeff Simon, stated in an email to Plaintiff and Mr. James, that 12 months would be too long to change splits and that the split needed to be adjusted sooner than that.

17.     Despite multiple requests, after 23 months the split percentages had not changed even though the total booked revenue YTD for Plaintiff's team had grown exponentially to $121M.

18.     Between September 2021 and June 2024, Plaintiff has had five (5) different managers including Jeff Simon, Joel Vargas, Kurt Olson, Mo Burman, and Debbie Dove Larson. Plaintiff has requested a split adjustment review with every new manager that came in.

19.     In December 2022 Plaintiff brought her concerns to Mr. James, who informed Plaintiff that he had no intentions of changing the split percentages.

20.    When Defendant's leadership was approached about this, Defendant enabled and ratified Mr. James control over the teams splits and his refusal to adjust the split despite the significant growth realized by the team.

21.    In fact, Defendant allowed Mr. James to give an additional 1% split increase to the male account manager who assisted on Plaintiff's team, Jeff Jacob, but refused to make any change to Plaintiff's split percentage.

22.    Because of the unfair split percentages, Mr. James regularly qualified for Defendant's Presidents Club, while Plaintiff has been unfairly denied such benefit and other bonus opportunities and recognition.

23.    Plaintiff and Mr. James both contribute to the same number of customers. Yet Defendant continues to only recognize Mr. James for the achievements of the team.

24.    In December 2022 Plaintiff complained to her Director Mo Burman, of the discrimination. Plaintiff further explained how she had upheld the teaming agreement but that Defendant had allowed Mr. James to continue denying Plaintiff her rights under the agreement.

25.    Mr. Burman asked Plaintiff to give him 90 days to review the teaming arrangement.

26.    As a result of that investigation, Plaintiff was told that the teaming agreement did not have a growth metric to adjust the split, despite such language being standard language for the other sales personnel who were all male in the Austin region.

27.    Instead of taking steps to address this issue, Defendant informed Plaintiff that she had the option to move to an ATAE position.

28.    Defendant stated that the standard split with ATAE and inside account manager is 50/50, which would mitigate the need for a new teaming agreement, and would allow Plaintiff to focus on the field role instead of the double role she had been performing.

29.    On May 25th Defendant coordinated a call with Mr. James, the team's assistant, Mr. Jacob, and a representative from HR, Kimberly Bruno.

30.    During their meeting Plaintiff was unexpectedly asked to present the complaints she was having with Mr. James.

31.    Instead of assisting Plaintiff, however, Ms. Bruno only said that she was there to listen. Even then, Ms. Bruno continually made comments that only served to dismiss many points Plaintiff was trying to make including statements that the ATAE and inside seller splits were not 50/50, thereby empowering Mr. James.

32.    Despite information from Defendant's Commissions Manager stating that the standard split is 50%, the Ms. Bruno simply stated that the standard ATAE split was not 50%.

33.    When it became clear that Plaintiff was being ganged up on, Plaintiff privately sent a message to Ms. Bruno informing her that Plaintiff was no longer comfortable continuing the conversation in an open forum.

34.    Thereafter, Plaintiff scheduled a 1:1 call with Ms. Bruno for the following day. During that conversation Plaintiff made a formal complaint of gender discrimination by the fact that she was not being given an equal split percentage like her male peers were receiving and the fact that she had been denied the automatic split adjustments that the other male account managers had based on the growth of their teams.

35.     After that 1:1 meeting, James Easter, a Sr. HR business partner reached out to Plaintiff for a meeting on June 2nd.  During that meeting Mr. Easter advised that he would be performing a formal investigation.

36.     Thereafter, on June 23rd Mr. Easter reached out to Plaintiff stating that he had not found any discrimination and that the matter would be closed.

37.     Following this meeting Plaintiff again asked Defendant for an update on their findings regarding the teaming agreement and also requested an update on Plaintiff's move to the ATAE position.

38.     On July 20th Plaintiff's direct manager, Mr. Oloson, stated that Plaintiff was no longer qualified to move to ATAE. Mr. Burman further told Plaintiff that she should "consider herself lucky" that she had joined Mr. James' book.

39.     Despite many months passing since Plaintiff's initial conversation asking for a split review and appropriate adjustment, Defendant only took steps to address Plaintiff's split percentage in September 2023 when Plaintiff's split was increased from 29% to 35%, a split that was still far from what other males were being given.

40.     This only occurred after Plaintiff single-handedly brought in multiple deals including one valued at $64 million. Yet, Mr. James received 59% of the initial $34 million of that deal when it closed.

41.     Defendant refused, however, to provide Plaintiff with a new teaming agreement that includes the required growth metrics that her male counterparts enjoy or that reflects a split that the male sellers have.

42. In addition to the manner in which Defendant has treated Plaintiff with regard to her split, Defendant has further allowed a misogynistic work environment by allowing male employees to make sexist comments and a demeaning attitude toward women.

43. Specifically, in April 2023, Plaintiff was working in Defendant's San Antonio office where a high-performing seller (Keith Galloway) told Plaintiff's coworker (Julianne Posey) that she looked "prettier yesterday when her hair was down and today looks like a lesbian, even though she's pregnant and clearly not lesbian."

44. Plaintiff complained about this sexist culture and the comment that she overheard and were made to her in April 2023. Despite Plaintiff's report to Mr. Olson and Mr. Easter being informed of the issue as well, Defendant has allowed such conduct to continue.

45. Plaintiff paid heavily for this complaint, and was not protected from retaliation. In fact, Defendant informed Mr. Galloway that Plaintiff was the one who called HR.

46. Some months later, in January 2024, Plaintiff was attending a partner/customer event with Pure Storage, when Plaintiff was pulled to the side by a technology partner/local rep. This technology partner/local rep. informed Plaintiff that Mr. Galloway was going around telling partners about Plaintiff's HR complaint and how ridiculous it was and smearing Plaintiff's name with clients.

47. To this day, Plaintiff continues to be affected Plaintiff's partnerships in the field that she had spent the last 10 years building.

48. When Plaintiff brought Mr. Galloway's conduct to James Easter's. other than stating that Mr. Galloway's conduct was inappropriate, Mr. Easter took no further action and Defendant continues to praise Mr. Galloway.

## VI.

## <u>CONDITIONS PRECEDENT</u>

49.     Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission, and the Charge was dual filed with the Texas Workforce Commission pursuant to those agencies' work sharing agreement.

50.     The Charge was filed within 300 days after the date on which the complained of employment practices were committed.

51.     More than 180 days have passed since the Charge was filed and no action has been taken.

52.     Plaintiff has timely exhausted all administrative remedies.

## VII.

## <u>CAUSES OF ACTION</u>

A.     **Cause of Action—Sex Discrimination—42 U.S.C. §2000e, et. seq. (Title VII), TCHRA[1]**

53.     Plaintiff incorporates each of the foregoing paragraphs.

54.     Defendant discriminated against Plaintiff because of Plaintiff's sex.

55.     Plaintiff was treated differently than similarly situated males.

56.     Defendant's actions violated Title VII and section 21.051 of the Texas Labor Code.

B.     **Cause of Action—Unlawful Retaliation—42 U.S.C. §2000e, et. seq. (Title VII), TCHRA**

57.     Plaintiff incorporates each of the foregoing paragraphs.

---

[1] Texas Commission on Human Rights Act, Texas Labor Code

58.    Plaintiff engaged in protected activity as set forth in Title VII and the Texas Labor Code section 21.055.

59.    In response, Defendant retaliated against Plaintiff by denying her a new teaming agreement to include language for regularly adjustment of her split percentages.

60.    In response, Defendant retaliated against Plaintiff by denying Plaintiff the opportunity to move to an ATAE position.

61.    Defendant's actions violated section Title VII, and 21.055 of the Texas Labor Code.

## VIII.

## DAMAGES

62.    Plaintiff incorporates each of the foregoing paragraphs.

63.    Defendant's actions violated Title VII and the TCHRA, which entitles Plaintiff to recover from Defendant back pay, front pay, compensatory damages, as well as pre-judgment and post-judgment interest.

64.    Because Defendant's actions were done with malice and/or reckless indifference to Plaintiff's state-protected rights, Plaintiff is entitled to recover from Defendant punitive damages.

65.    Plaintiff seeks all damages available under Title VII and the TCHRA.

## IX.

## ATTORNEYS' FEES AND COSTS

66.    Plaintiff incorporates each of the foregoing paragraphs.

67.    Plaintiff retained the services of undersigned counsel to prosecute Plaintiff's claims.

68.     Pursuant to Title VII and Texas Labor Code section 21.259, Plaintiff is entitled to recover a reasonable attorneys' fee from Defendant, including reasonable expert fees.

## X.

## RESPONDEAT SUPERIOR

69.     Plaintiff incorporates each of the foregoing paragraphs.

70.     Defendant is liable for the acts and/or omissions of their respective agents, representatives, employees, servants, and officers.

## XI.

## INJUNCTIVE AND EQUITABLE RELIEF

71.     Plaintiff incorporates each of the foregoing paragraphs.

72.     Plaintiff requests the Court enter an order providing injunctive and declaratory relief including, but not limited to:

a.     Prohibiting Defendant from engaging in unlawful discrimination;

b.     Reporting to the Court on the manner of compliance with the terms of a final order issued by this Court;

c.     Reinstating Plaintiff's employment with Defendant with backpay;

d.     Paying court costs;

e.     Any additional equitable relief as the Court deems proper.

## XII.

## JURY TRIAL

73.     Plaintiff incorporates each of the foregoing paragraphs.

74.     Plaintiff demands a jury trial.

## XIII.
## PRAYER

75.     Plaintiff respectfully requests that Defendant be cited to appear and answer, and that upon final trial of this matter, the Court enter judgment against Defendant, jointly and severally, awarding Plaintiff:

A.     Back pay and front pay (including benefits);

B.     Compensatory damages;

C.     Punitive damages;

D.     Reasonable attorneys' fees and expert fees;

E.     Injunctive and equitable relief, including but not limited to, an Order:

   (i).     Prohibiting Defendant from engaging in unlawful discrimination;

   (ii).    Reinstating Plaintiff's employment with Defendant with backpay;

   (iii).   Reporting to the Court on the manner of compliance with the terms of a final order issued by this Court;

   (iv).    Paying court costs;

   (v).     Any additional equitable relief the Court deems proper;

F.     Courts costs;

G.     Pre-judgment and post-judgment interest at the rate set by law; and

H.     All legal or equitable relief this Court deems proper.

Respectfully submitted,

/s/ Mark D Downey
MARK D DOWNEY
Texas Bar No. 00793637
mdowney@dlawgrp.com
**D LAW GROUP/MARK D DOWNEY PLLC**
5308 Ashbrook
Houston, Texas 77081
214-764-7279
**ATTORNEYS FOR PLAINTIFF**